JOHN and NANCY BOWEN, plaintiffs in error, vs. JOHN SLAUGH-
TER and AMOS BROWN, defendants in error.

McDONALD, J., dissenting.

John Bowen and Nancy Bowen filed their bill in chancery against John Slaughter and Amos Brown, praying that tract of land number eighty-two, in the thirty-first district of the county of Lee originally, but now of the county of Marion, may be decreed to be their land, and that the defendants may be compelled to account for the rents of the same. The bill alleges, in substance, that Alford Bowen, the father of John Bowen and the husband of Nancy Bowen, while in life, in July, 1825, resided in Stokes District in the county of Morgan, and was, by virtue of certain acts of the Legislature, entitled to two draws in the land lottery for distributing the lands then lately acquired from the Creek tribe of Indians, and that he gave in for two draws in said lottery, to the receiver of the names of persons entitled to draws therein, in Stokes District, in said county, that the said receiver of names made a mistake in entering his name, or in transcribing it in the book sent to the Executive Department, and entered for his name the name "Alford Brown." The bill further alleges that the name "Alford Brown" drew lot of land number eighty-two in the thirty-first district of the county of Lee originally, but now of the county of Marion, and that a grant was issued in the name of the said Alford Brown for the same, on the 22d day of November, 1837.

The bill alleges, further, that at the time of giving in names for draws in said land lottery, no person resided in said Stokes District or the county of Morgan named " Alford · *Brown*," but the said Alford *Bowen* resided there and gave in for draws in said District, that Alford Bowen departed this life while complainant John was quite young, and that neither of the complainants knew anything of the mistake herein stated until within the last twelve months preceding the filing of the bill; and that complainants as well as the deceased Alford Bowen, when in life, supposed that his name had been correctly taken down and that he had drawn nothing; and the bill further charges expressly, that the said Alford Bowen drew the said tract of land by the name of Alford Brown. That all the children of the said Alford Bowen, except the complainant John, are dead without issue; that the land is the property of the complainants. The bill further alleges that they sent to get possession of the land and found John Slaughter, one of the defendants, in possession, who refused to give possession, setting up a claim thereto under a pretended conveyance from one Amos Brown of the county of Morgan, who is the other defendant; that said Slaughter purchased the land from said Amos Brown with a full knowledge of all the facts set forth in the said bill touching the rights of the complainants; and if he was ignorant of the rights of the complainants when he made the purchase, he was fully apprised thereof before he paid for the same, and if he has completed said payment, it has been done on the assurance of the said Amos Brown to hold him harmless against any suit for the recovery of it by the complainants. The bill further alleges that the said Amos Brown on the 22d day of November, 1857, well knowing that the said land was not his, and knowing that said Alford Bowen put in for said draws, and that, but for said mistake of the receiver of the draws aforesaid, the said lot of land would have been drawn by the said Alford Bowen, and knowing that there was no such person as Alford Brown

in Stokes District, and knowing the ignorance of the said Alford Bowen, while in life, of said mistake made by the receivers, and greatly presuming upon the ignorance of the complainants in respect thereto, and of their remaining ignorant thereof, took out the grant for said lot of land in the name of Alford Brown, and pretended thereafter that the said lot of land was his right and property, as there was no such person in said District as Alford Brown at the time of giving in for said draws. The said bill further alleges that the said Amos Brown not only knew that the said name " Alford Brown" was not put down or transcribed by the said receivers for the name of Amos Brown, but that through mistake on their part, it was put down for the name of Alford Bowen, and was so returned by the said receivers.

The bill further alleges that Amos Brown gave in for but one draw in said lottery, and that as a single man he was entitled to but one, as the exhibit attached to the bill of the returns of the persons giving in for draws in Stokes District shows.

The bill alleges further that the said Amos Brown, by virtue of that draw so given in, drew tract of land No. 24 in the 23d district of originally Muscogee county, and that the said Amos Brown well knew it, for that soon after the drawing was over, on the 27th day of July, 1830, he took out the grant for said land as his own right and property, and still holds the same, if he has not sold it.

The bill further alleges that the said John Slaughter has been in possession of the lot of land number 82 in the thirty-first district of Lee county, and has lived on and cultivated it for four years or other " long space of time," and that the rents and profits are worth one hundred dollars per annum.

The defendants demurred to the bill on five distinct grounds :

1st. That there is no equity in the bill.

2d. Because complainants show that they have no title to the land.

3d. Because the complainants cannot, in this indirect way, perfect an inchoate title, even if it be true that a mistake occurred, as charged in the bill.

4th. That complainants, by their own showing, have a good and perfect remedy at common law, if they have any right at all.

5th. That complainants, by their own showing, exhibit the fact that the defendant has a good statutory title by a continuous possession under color of title for more than seven years immediately preceding the commencement of said cause in equity.

The Court below sustained the demurrer and ordered the bill to be dismissed. To that judgment the complainants except, and this Court affirms the judgment, from which judgment of affirmance I dissent for reasons which I shall proceed to assign.

This bill is badly drawn. It does not seek to reform the grant, and there is no prayer for general relief. It would, perhaps, have been better, that the Attorney General had been made a party, and there had been a prayer that would have authorized the Court to have made a decree for that purpose or to cancel it. But according to the allegations, of the bill the grant to Alford Brown, no person of that name having resided in Stokes District, Morgan county, at the time of giving in the names of persons entitled to draws, was the same as a grant to a fictitious person and void. There cannot be a valid grant, if there be no grantor except in the cases allowed by the statute.

It is clear that Amos Brown, who assumed to be the owner of the land, was not entitled to it. He was entitled to but one draw in the Land Lottery and he gave in for but one. He drew a tract of land in his own name, and it was granted to him. He could not have been entitled to the land drawn to the name of Alford Brown,

Alford *Bowen* gave in for two draws in the lottery, but his name does not appear in the schedule of names returned for

Stokes District—the District in which he resided and gave in. The name "Alford Brown," appears on that schedule, but no such person resided in the District. These facts being true then, and they must be so considered, the land must have been drawn to a name which had, through the mistake of th e person who received the name and transmitted it to the Executive Department, been substituted for that of Alford Bowen; and it is clear that neither he nor his heirs at law should suffer for the mistake of official agents whose duty it was to receive and transmit the names of persons entitled to draws.

Amos Brown was guilty of a fraud in taking out the grant and conveying the land when he must have known he was not entitled to it; and Slaughter, having had notice of all the facts before he completed his purchase, was in no better con dition than Amos Brown. Indeed, if he had looked at the grant, he would have seen that Amos Brown had no ti_ tle, and he is to be presumed to have examined that. On the ground of mistake and fraud, then, a Court of Chancery has jurisdiction. It is objected, however, that the grant cannot be assailed in a Court of Equity.

There is no prayer to set aside the grant, and hence there is no necessity for presenting my views at length for believing that in this State, Courts of Chancery have jurisdiction to correct errors in grants. Courts of Chancery must cre tte remedies for new cases, and while it will not decree against the State, there is no good reason, in my judgment, why it should not give remedies against persons, who have fraudulently obtained the possession of property belonging to others, using for that purpose a grant improperly procured from the State. Because a person obtains a title from the State, for land to which he has no right, why should he not be decreed to be a trustee for the rightful owner, and be compelled to convey, in the same manner as if such fraudulent title was obtained from an individual. In the case of the *Attorney General vs. Ver non ;* 1 *Vernon,* 281, jurisdiction was entertained by the Court of Chancery, in the case of letters patent, on the ground that fraud was properly relievable in that Court. Why should not

the complainants in this cause, if their bill was imperfect, have been directed to amend it, so as to have brought all the persons before the Court, whom the Chancellor should deem to be necessary parties, and have had such a decree made as the manifest equity in the bill entitled them to?  The bill ought not to have been *dismissed* for want of equity.  There is abundance of equity in the bill, and the defendants ought to have been compelled to answer, after such amendment of the bill, as would bring all the parties before the Court.  If Alford Brown was a fictitious person, there was no necessity for the cancellation of the grant.  If that fact had been established, the grant would have been void, and upon a decree to that effect, the General Assembly would, unquestionably, have directed a grant to be issued to the rightful owners, if, according to an adjudicated case, the judiciary could not afford a remedy.

The second ground in the demurrer ought not to have been sustained.  The bill shows a right in equity to the land, and it ought to have been sustained to enforce it.

From what I have already said, it may be inferred that I think the complainants have a remedy, in the manner they have proceeded to obtain their rights.  And why, if their case is such as is represented in the bill, have they not a right to a decree for the possession of the land, and to a conveyance from Slaughter of all the title that he holds?

The complainants have no remedy at law, for in that forum they cannot avail themselves of the mistake, which shows a title out of them.

There is nothing in the bill which shows that a statutory title has been perfected in the defendants.  The fraud and the recent discovery of it, as alleged, is sufficient to relieve the case from the bar, if it had appeared that there had been a continuous uninterrupted possession of the land for seven years prior to the institution of this suit.  I think, therefore, that the judgment of the Court below ought to be reversed.

[See judgment in this case at p. 338.]